NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANTHONY CIPOLLA,                  :
                                  :    Civil Action No. 10-0889 (NLH)
              Plaintiff,          :
                                  :
         v.                       :    **OPINION**
                                  :
GEORGE W. HAYMAN, et al.,         :
                                  :
              Defendants.         :

**APPEARANCES:**

Plaintiff pro se
Anthony Cipolla
c/o Danielle Cipolla
33 Laurel Drive
Wayne, NJ 07470

**HILLMAN**, District Judge

    Plaintiff Anthony Cipolla, a prisoner previously confined at

Mid-State Correctional Facility in Wrightstown, New Jersey, seeks

to bring this action in forma pauperis pursuant to 42 U.S.C.

§ 1983, alleging violations of his constitutional rights.  Based

on his affidavit of indigence and the absence of three qualifying

dismissals within 28 U.S.C. §1915(g), the Court will grant

Plaintiff's application to proceed in forma pauperis pursuant to

28 U.S.C. § 1915(a) and order the Clerk of the Court to file the

Complaint.[1]

---

[1] It is not clear whether Plaintiff remains confined, as he
has requested that all correspondence be sent to him care of his
daughter.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I.   BACKGROUND

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff alleges that on September 8, 2008, Thomas Guerrerro[2] forcefully threw a bottle of water at Plaintiff, hitting him in the ear.  Plaintiff alleges that Mr. Guerrerro threw the bottle of water for no reason other than his own amusement.  Plaintiff alleges that, as a result of this incident, he suffered permanent hearing loss in both ears as well as ringing in the ears.

Plaintiff alleges that Gilbert Lattier, Justo Morell, and Eddie Holmes were present when this incident occurred and that they failed to protect Plaintiff from this violence by their co-worker, who they should have known was prone to violence because

_____

[2] Defendants Thomas Guerrerro, Russ Gilbert, Justo Morell, Gilbert Lattier, and Eddie Holmes are described in the Complaint as civilian employees at Mid-State Correctional Facility.  Russ Gilbert is further described as the Department Head of "E.I.C."; Thomas Guerrerro is further described as an Assistant in "E.I.C."; Justo Morell is described as an Electrical Supervisor, Gilbert Lattier is described as a Boiler Room Supervisor, and Eddie Holmes is described as a locksmith.

2

he had been disciplined for violent acts in the past.  Plaintiff alleges that Justo Morell and Russ Gilbert acted in concert to "cover up" the incident by use of threats and coercion against Plaintff.

Plaintiff alleges that Investigators Rocco and Dill of Mid-State Correctional Facility tried to threaten and intimidate him, and that they obtained administrative transfers of Plaintiff to a total of four state correctional facilities in an attempt to deprive him of timely diagnosis and treatment of his injuries.

Plaintiff alleges that Dr. Collins (of the Medical Department at Mid-State Correctional Facility), Dr. Grace Melendez (of the N.J.D.O.C. Central Reception and Assignment Facility), Dr. Razvi, Dr. Shau (of the Medical Department at Southern State Correctional Facility), Dr. Jane Doe (of the Medical Department at Southwoods State Prison), and Dr. John Doe (an audiologist), lied by telling investigators that Plaintiff's injuries were due to a pre-existing condition.  Plaintiff alleges that it took these Department of Corrections medical personnel approximately five months to diagnose and treat him for his injuries.

Plaintiff alleges that Defendants Commissioner George W. Hayman, Administrator George Robinson, Assistant Administrator Ronald Riggins, Warden Chief Moon, Administrator Grace Rogers, Administrator Charles Albino, and the fictitious defendants

failed to train and supervise their employees, who then violated Plaintiff's rights.  Plaintiff alleges that these administrators "allowed" their subordinates to conspire to deprive Plaintiff of his right to proper medical care.  Plaintiff alleges that Administrator Robinson knew "or should have known" of Plaintiff's injuries and of the conspiracy to deprive Plaintiff of proper medical care.

Plaintiff alleges generally that all of the defendants conspired to deprive him of his Eighth Amendment right to be free from cruel and unusual punishment.

Plaintiff seeks all appropriate relief, including compensatory and punitive damages.

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

This Court must dismiss, at the earliest practicable time, certain <u>in forma pauperis</u> and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  <u>See</u> 28 U.S.C. § 1915(e)(2) (<u>in forma pauperis</u> actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United</u>

4

States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must
"accept as true all of the allegations in the complaint and all
reasonable inferences that can be drawn therefrom, and view them
in the light most favorable to the plaintiff."  Morse v. Lower
Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

A complaint is frivolous if it "lacks an arguable basis
either in law or in fact."  Neitzke v. Williams, 490 U.S. 319,
325 (1989) (interpreting the predecessor of § 1915(e)(2), the
former § 1915(d)).  The standard for evaluating whether a
complaint is "frivolous" is an objective one.  Deutsch v. United
States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

In addition, any complaint must comply with the pleading
requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and
plain statement of the claim showing that the pleader is entitled
to relief."  A complaint must plead facts sufficient at least to
"suggest" a basis for liability.  Spruill v. Gillis, 372 F.3d
218, 236 n.12 (3d Cir. 2004).  "Specific facts are not necessary;
the statement need only 'give the defendant fair notice of what
the ... claim is and the grounds upon which it rests.'"  Erickson
v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).

> While a complaint ... does not need detailed factual
> allegations, a plaintiff's obligation to provide the
> "grounds" of his "entitle[ment] to relief" requires
> more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will
> not do, see Papasan v. Allain, 478 U.S. 265, 286, 106

> S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to
> dismiss, courts "are not bound to accept as true a
> legal conclusion couched as a factual allegation").
> Factual allegations must be enough to raise a right to
> relief above the speculative level ... .

<u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)

(citations omitted).

The Supreme Court has demonstrated the application of these

general standards to a Sherman Act conspiracy claim.

> In applying these general standards to a § 1
> [conspiracy] claim, we hold that stating such a claim
> requires a complaint with enough factual matter (taken
> as true) to suggest that an agreement was made.  Asking
> for plausible grounds to infer an agreement does not
> impose a probability requirement at the pleading stage;
> it simply calls for enough fact to raise a reasonable
> expectation that discovery will reveal evidence of
> illegal agreement.  And, of course, a well-pleaded
> complaint may proceed even if it strikes a savvy judge
> that actual proof of those facts is improbable, and
> "that a recovery is very remote and unlikely." ...  It
> makes sense to say, therefore, that an allegation of
> parallel conduct and a bare assertion of conspiracy
> will not suffice.  Without more, parallel conduct does
> not suggest conspiracy, and a conclusory allegation of
> agreement at some unidentified point does not supply
> facts adequate to show illegality.  Hence, when
> allegations of parallel conduct are set out in order to
> make a § 1 claim, they must be placed in a context that
> raises a suggestion of a preceding agreement, not
> merely parallel conduct that could just as well be
> independent action.

> The need at the pleading stage for allegations
> plausibly suggesting (not merely consistent with)
> agreement reflects the threshold requirement of Rule
> 8(a)(2) that the "plain statement" possess enough heft
> to "sho[w] that the pleader is entitled to relief."  A
> statement of parallel conduct, even conduct consciously
> undertaken, needs some setting suggesting the agreement
> necessary to make out a § 1 claim; without that further
> circumstance pointing toward a meeting of the minds, an

        account of a defendant's commercial efforts stays in
        neutral territory. ...

<u>Twombly</u>, 550 U.S. at 556-57 (citations and footnotes omitted).

      The Court of Appeals for the Third Circuit has held, in the
context of a § 1983 civil rights action, that the <u>Twombly</u>
pleading standard applies outside the § 1 antitrust context in
which it was decided.  <u>See</u> <u>Phillips v. County of Allegheny</u>, 515
F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read
<u>Twombly</u> so narrowly as to limit its holding on plausibility to
the antitrust context").

        Context matters in notice pleading.  Fair notice under
        Rule 8(a)(2) depends on the type of case -- some
        complaints will require at least some factual
        allegations to make out a "showing that the pleader is
        entitled to relief, in order to give the defendant fair
        notice of what the ... claim is and the grounds upon
        which it rests."  Indeed, taking <u>Twombly</u> and the
        Court's contemporaneous opinion in <u>Erickson v. Pardus</u>,
        127 S.Ct. 2197 (2007), together, we understand the
        Court to instruct that a situation may arise where, at
        some point, the factual detail in a complaint is so
        undeveloped that it does not provide a defendant the
        type of notice of claim which is contemplated by
        Rule 8.  Put another way, in light of <u>Twombly</u>, Rule
        8(a)(2) requires a "showing" rather than a blanket
        assertion of an entitlement to relief.  We caution that
        without some factual allegation in the complaint, a
        claimant cannot satisfy the requirement that he or she
        provide not only "fair notice," but also the "grounds"
        on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

      More recently, the Supreme Court has emphasized that, when
assessing the sufficiency of <u>any</u> civil complaint, a court must
distinguish factual contentions -- which allege behavior on the

part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  See Phillips, 515 F.3d
> at 234-35.  As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

> Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

Rule 18(a) controls the joinder of claims.  In general, "[a] party asserting a claim ... may join as independent or alternative claims, as many claims as it has against an opposing party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants
> if:
>     (A) any right to relief is asserted against them
> jointly, severally, or in the alternative with respect
> to or arising out of the same transaction, occurrence,
> or series of transactions or occurrences; <u>and</u>
>     (B) any question of law or fact common to all
> defendants will arise in the action.

(emphasis added).  <u>See</u>, <u>e.g.</u>, <u>Pruden v. SCI Camp Hill</u>, 252 Fed.Appx. 436 (3d Cir. 2007); <u>George v. Smith</u>, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a),
> plaintiff may join multiple defendants in a single
> action only if plaintiff asserts at least one claim to
> relief against each of them that arises out of the same
> transaction or occurrence and presents questions of law
> or fact common to all.  If the requirements for joinder
> of parties have been satisfied, however, Rule 18 may be
> invoked independently to permit plaintiff to join as
> many other claims as plaintiff has against the multiple
> defendants or any combination of them, even though the

9

> additional claims do not involve common questions of
> law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane,

Federal Practice and Procedure, § 1655 (3d ed. 2009).

The requirements prescribed by Rule 20(a) are to be liberally construed in the interest of convenience and judicial economy.  Swan v. Ray, 293 F.3d 1252, 1253 (11th Cir. 2002). However, the policy of liberal application of Rule 20 is not a license to join unrelated claims and defendants in one lawsuit. See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348 (9th Cir. 1997).

Pursuant to Rule 21, misjoinder of parties is not a ground for dismissing an action.  Instead, a court faced with a complaint improperly joining parties "may at any time, on just terms, add or drop a party.  The court may also sever any claims against a party."

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.  <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).[3]

Local government units and supervisors are not liable under § 1983 solely on a theory of <u>respondeat superior</u>.  <u>See City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v.</u>

---

[3] Plaintiff describes Dr. John Doe and Dr. Razvi as being Department of Corrections medical personnel, but also describes them as being from Hamilton Township.  For purposes of this Opinion and related Order, this Court considers these doctors to be "state actors."  To the extent these doctors could not be considered "state actors," they are not liable for any violations of Plaintiffs rights under the Eighth Amendment on that ground, alone.

New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).

     Similarly, any allegation of "conspiracy" to deprive an individual of constitutional rights must include factual allegations showing personal involvement of the alleged conspirators.

     In order to demonstrate a "conspiracy," "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of state law.'" Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 7000 (3d Cir. 1993), abrogated on other grounds, United

Artists Theatre Circuit, Inc. v. Township of Warrington, 316 F.3d 392 (3d Cir. 2003) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970)).  Agreement is the sine qua non of a conspiracy.

To state a claim for conspiracy under § 1983, a plaintiff must make "factual allegations of combination, agreement, or understanding among all or between any of the defendants [or coconspirators] to plot, plan, or conspire to carry out the alleged chain of events." Hammond v. Creative financial Planning Org., 800 F.Supp. 1244, 1249 (E.D. Pa. 1992) (citing Ammlung v. City of Chester, 494 F.2d 811, 814 (3d Cir. 1974)).[4]

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55.  "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of

---

[4] Here, Plaintiff has failed to allege any facts showing an agreement or plan formulated and executed by any of the Defendants to achieve any conspiracy.  Absent such allegations, Plaintiff's bald allegations of conspiracy are insufficient to state a claim based upon any alleged conspiracy. See, e.g., Swanson v. Miller, 55 Fed.Appx. 871, 2003 WL 150046 (10th Cir. Jan. 22, 2003) (upholding dismissal of conclusory allegations of conspiracy).  Accordingly, this Court will dismiss all claims of "conspiracy" and will assess the viability of the remaining claims based upon allegations of personal involvement.

federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985)

(internal quotation marks and citations omitted).

IV.   <u>ANALYSIS</u>

A.   <u>The Excessive Force Claim</u>

Plaintiff alleges that on September 8, 2008, Thomas

Guerrerro forcefully threw a bottle of water at Plaintiff,

hitting him in the ear and causing permanent hearing loss.  He

also alleges that Gilbert Lattier, Eddie Holmes, and Justo Morell

were present when this incident occurred and that they failed to

protect Plaintiff from this violence by their co-worker, who they

should have known was prone to violence because he had been

disciplined for violent acts in the past.  Finally, Plaintiff

alleges that Russ Gilbert and the other personnel present at the

time of the attack acted to "cover up" the incident.

The Eighth Amendment prohibits punishments that are "cruel

and unusual."  An Eighth Amendment claim includes both an

objective component, whether the deprivation of a basic human

need is sufficiently serious, and a subjective component, whether

the officials acted with a sufficiently culpable state of mind.

<u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The objective

component is contextual and responsive to "'contemporary

standards of decency.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8

(1992).  The subjective component follows from the principle that

"'only the unnecessary and wanton infliction of pain implicates

14

the Eighth Amendment.'"  See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  Hudson v. McMillian, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in Whitley v. Albers, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  Quoted in Hudson, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  Id. at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used.  Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force is "excessive," the level of a constitutional violation.

Here, Plaintiff's allegations that Defendant Thomas Guerrrero threw a water bottle at him, for no reason, with enough force to cause him permanent hearing loss, are sufficient to state a claim for excessive use of force in violation of the Eighth Amendment.

In addition, "a corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do so.  Furthermore, ... a corrections officer can not escape liability by relying upon his inferior or non-supervisory rank vis-a-vis the other officers."  Smith v. Mensinger, 293 F.3d 641, 640 (3d Cir. 2002).

16

Here, Plaintiff does not allege any facts that would suggest that Defendants Gilbert Lattier, Justo Morell, or Eddie Holmes had any reasonable opportunity to intervene and stop Defendant Guerrero from injuring Plaintiff.  Accordingly, the excessive-force claim against these defendants will be dismissed.

Finally, Plaintiff's allegation that Defendants Lattier, Holmes, Morell, and Gilbert conspired to "cover up" the incident fails to allege any facts indicating that any of these defendants violated Plaintiff's constitutional rights.  The claims against these four defendants will be dismissed.

B.    The Medical-Care Claim

Plaintiff alleges that Dr. Collins, Dr. Grace Melendez, Dr. Razvi, Dr. Shau, and fictitious medical personnel defendants violated his Eighth Amendment right to adequate medical care by attributing his injury to a pre-existing condition and taking five months to diagnose and treat Plaintiff.

The Eighth Amendment to the United States Constitution, applicable to the individual states through the Fourteenth Amendment, prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes.  Rhodes v. Chapman, 452 U.S. 337, 344-46 (1981).  This proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable

17

claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Id. at 106.

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in

18

itself indicate deliberate indifference.  Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted).  Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06; White, 897 F.2d at 110.

"Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest.  Similarly, where 'knowledge of the need for medical care [is accompanied by the] ... intentional refusal to provide that care,' the deliberate indifference standard has been met.  ...  Finally, deliberate

indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment." Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted). "Short of absolute denial, 'if necessary medical treatment [i]s ... delayed for non-medical reasons, a case of deliberate indifference has been made out." Id. (citations omitted). "Deliberate indifference is also evident where prison officials erect arbitrary and burdensome procedures that 'result[] in interminable delays and outright denials of medical care to suffering inmates.'" Id. at 347 (citation omitted). Compare Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions) with Sprull v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable under § 1983 if he knew or had reason to know of inadequate medical care).

Here, the allegations against the medical personnel - that they took five months to diagnose and treat Plaintiff and that they attributed his injury to a prior condition - do not suggest deliberate indifference, especially in light of Plaintiff's

20

allegations that he was transferred repeatedly during this period.  Indeed, these allegations are too vague even to suggest medical malpractice, which does not, in any event, rise to the level of a constitutional violation.  Nor do the allegations of the Complaint contain any facts from which deliberate indifference could be inferred on the part of any supervisory or administrative personnel.

As for the allegation against the investigators, Mr. Rocco and Mr. Dill, that they procured multiple transfers of Plaintiff in an attempt to deprive him of timely and adequate treatment of his injuries, that is sufficient to state a claim for violation of Plaintiff's Eighth Amendment right to adequate medical care.

C.    The Failure-to-Supervise Claim

Plaintiff alleges that Defendants Commissioner George W. Hayman, Administrator George Robinson, Assistant Administrator Ronald Riggins, Chief Moon, Administrator Grace Rogers, Administrator Karen Balicki, Administrator Charles Albino, and various fictitious defendants are responsible for the alleged violations of his constitutional rights because of their failure to train and/or supervise their subordinates.

Where a need for "more or different training ... is so obvious, and the inadequacy so likely to result in constitutional violations, that the failure to train ... can fairly be said to represent official policy," City of Canton v. Harris, 489 U.S.

21

378, 390 (1989), and that failure to train "actually causes injury," a supervisor may be held liable, Id.

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.  That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [supervisor], for the officer's shortcomings may have resulted from factors other than a faulty training program. ...  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training ... .  Moreover, for liability to attach ... the identified deficiency in a city's training program must be closely related to the ultimate injury.

Id. at 390-91.

Here, Plaintiff alleges facts sufficient to state a claim against one civilian employee, an electrician, for use of excessive force and a claim against two investigators for deliberate indifference to his medical needs.  Plaintiff alleges that the electrician had been involved in one or more prior altercations with prisoners.  However, Plaintiff alleges no facts about the circumstances of those prior incidents or the responses of the employee's supervisors to those incidents.  Plaintiff alleges no facts whatsoever about the training or supervision of these employees.  Thus, these apparently isolated incidents are not sufficient to state a claim against the various supervisory and administrative personnel for failure to supervise and/or train the offending employees.

D.    The Application for Appointment of Counsel

     Plaintiff seeks appointment of counsel because he is unable
to afford counsel of his own.

     Indigent persons raising civil rights claims have no
absolute constitutional right to counsel.  Parham v. Johnson, 126
F.3d 454, 456-57 (3d Cir. 1997).  In determining whether to
appoint counsel, a court should consider several factors:

>     As a preliminary matter, the plaintiff's claim must
>     have some merit in fact and law. ... If the district
>     court determines that the plaintiff's claim has some
>     merit, then the district court should consider the
>     following factors:
>
>          (1) the plaintiff's ability to present his or her
>     own case;
>          (2) the complexity of the legal issues;
>          (3) the degree to which factual investigation will
>     be necessary and the ability of the plaintiff to pursue
>     such investigation;
>          (4) the amount a case is likely to turn on
>     credibility determinations;
>          (5) whether the case will require the testimony of
>     expert witnesses;
>          (6) whether the plaintiff can attain and afford
>     counsel on his own behalf.
>
>     [Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir.
>     1993), cert. denied, 510 U.S. 1196 (1994).]  This list
>     of factors is not exhaustive, but instead should serve
>     as a guide post for the district courts.
>
>          Correspondingly, courts should exercise care in
>     appointing counsel because volunteer lawyer time is a
>     precious commodity and should not be wasted on
>     frivolous cases.  Id. at 157.

Parham, 126 F.3d at 457-58.

     In considering the first factor, courts should consider "the
plaintiff's education, literacy, prior work experience, and prior

23

litigation experience." <u>Tabron</u>, 6 F.3d at 156.  In addition,
courts should consider whether the plaintiff has access to
resources such as a typewriter, photocopier, telephone, and
computer.  <u>Id.</u>

    "Where the legal issues are complex, it will probably serve
everyone involved if counsel is appointed."  <u>Parham</u>, 126 F.3d at
459 (citing <u>Tabron</u>, 6 F.3d at 156 and <u>Maclin v. Freake</u>, 650 F.2d
885, 889 (7th Cir. 1981) (per curiam) ("[W]here the law is not
clear, it will often best serve the ends of justice to have both
sides of a difficult legal issue presented by those trained in
legal analysis.")).

    In considering the ability of a plaintiff to investigate the
facts, courts "should be aware that it may be difficult for
indigent plaintiffs to understand the complex discovery rules."
<u>Parham</u>, 126 F.3d at 460.

    In considering the credibility factor, "courts should
determine whether the case was solely a swearing contest."
<u>Parham</u>, 126 F.3d at 460.

    The necessity of an expert witness "weighs heavily in favor
of appointment of counsel."  <u>Parham</u>, 126 F.3d at 460.  Finally,
where other factors weigh in favor of appointment of counsel,
evidence that a plaintiff has made extensive unsuccessful efforts
to obtain counsel weighs heavily in favor of appointment.
<u>Parham</u>, 126 F.3d at 461.

Analysis of these factors reveals that appointment of counsel is not appropriate at this time.  As a preliminary matter, Plaintiff has presented certain claims with merit in fact and in law sufficient to avoid dismissal at the screening stage.

However, Plaintiff has failed to address most of the other criteria for appointment of counsel.  The Court notes that the claims that have survived screening do not involve complicated medical issues, nor do they appear to be the types of claims that would require expert testimony.  Accordingly, it does not appear that Plaintiff requires counsel at this time.  The Court will deny the request for counsel without prejudice to Plaintiff or the Court revisiting the issue should circumstances warrant as the litigation of this matter proceeds.

V.   <u>CONCLUSION</u>

For the reasons set forth above, the Eighth Amendment excessive-force claim may proceed as against Defendant Guerrerro and the Eighth Amendment medical-care claim may proceed as against Defendant Investigators Rocco and Dill.  All other claims will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim.

However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to overcome

25

certain deficiencies noted herein, the Court will grant Plaintiff leave to file an amended complaint.[5]

An appropriate order follows.


At Camden, New Jersey                    /s/ Noel L. Hillman
                                         Noel L. Hillman
                                         United States District Judge

Dated: December 8, 2011

---

[5] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.